IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 21-312 |
| | ) | |
| DANIEL MUESSIG | ) | |
| | ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

AND NOW comes the United States of America, by its attorneys, Cindy K. Chung, United States Attorney for the Western District of Pennsylvania, and Rebecca L. Silinski, Assistant United States Attorney for said District, and submits this Sentencing Memorandum to the Court:

**I.      INTRODUCTION**

"Consequences, they sure suck don't they?"[1] – Daniel Muessig

On March 8, 2022, Mr. Muessig, who accepted responsibility on November 16, 2021, for his conduct underlying Counts One and Two of the Indictment, will come before this Court to be sentenced, facing the consequences of his own actions, which results in a statutorily mandated 60-month term of imprisonment and 4 years of supervised release. In advance of the sentencing hearing, the United States submits this memorandum in support of the statutorily required 60-month term of imprisonment and 4-year term of supervised release.

**II.     RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**

On June 4, 2019, a federal grand jury sitting in the Western District of Pennsylvania, returned a two-count Indictment, charging five (5) individuals with violations of federal drug laws.

---

[1]  "Thanks Dan!!!" You Tube (Feb. 14, 2020), available at https://www.youtube.com/watch?v=i_iaugcJW7Q. The video was originally created in 2014. Mr. Muessig explained, in the disclaimer as well as during a separate interview that the video was not intended to "condone or endorse criminality." https://www.youtube.com/watch?v=nnGZwb-rtAU.

On July 20, 2021, a federal grand jury sitting in the WDPA returned a related, two-count Indictment, charging two (2) individuals, Mr. Muessig, and co-defendant Hector Rodriguez with violations of federal drug laws. Mr. Muessig is charged at both counts of the Indictment – that is, conspiring to distribute 100 kilograms or more of marijuana from April 2019 to May 2019, and possession with intent to distribute 100 kilograms or more of marijuana on May 24, 2019.

On August 26, 2021, Mr. Muessig was arrested and made his initial appearance, pled not guilty and was released on pre-trial supervision with a $500,000 bond. Thereafter, on November 16, 2021, Mr. Muessig pled guilty as charged, pursuant to a written plea agreement between the United States and Mr. Muessig.

As a result of an investigation, conducted by the Greater Pittsburgh Safe Streets Task Force, led by the Federal Bureau of Investigation, Mr. Muessig was identified as a large-scale marijuana distributor/supplier, in the Greater Pittsburgh Region. The investigation initially related to drug-trafficking activity occurring in the Western District of Pennsylvania, specifically in the Braddock section of Pittsburgh. *See* US v. Howard McFadden, Crim. No. 19-162. Law enforcement identified several individuals, suspected at the time, of illegally distributing controlled substances in the Greater Pittsburgh Region, as members of a neighborhood-based street gang, self-titled "SCO." As a result of this investigation, from January of 2019 through May of 2019, investigators obtained nine (9) Title III wiretap authorizations.

While intercepting communications over telephones used by Howard McFadden, SCO's leader (Crim. No. 19-162), law enforcement identified Chadlin Leavy (Crim. No. 19-160 and 19-163) as one of McFadden's heroin and cocaine sources of supply. In April of 2019, investigators obtained authorization for the interception of wire and electronic communications over a telephone operated by Chadlin Leavy. In addition to cocaine and heroin, investigators learned that Mr. Leavy

2

also distributed marijuana. This, then, led to identifying Mr. Leavy's marijuana source of supply as Jared Eck (Crim. No. 19-163).

Intercepted communications revealed that Mr. Eck met Mr. Leavy on Fridays to be resupplied with marijuana and the two would communicate via wire and electronic communications to arrange their meetings. The investigation further revealed that prior to meeting Mr. Leavy, Mr. Eck either met with his supplier to obtain marijuana, or obtained marijuana from his own his stash house.

Law enforcement obtained a tracker and ping warrant on Mr. Eck's truck and phone, respectively. In conjunction with the intercepted communications as well as data obtained from the tracker and ping, law enforcement conducted physical surveillance, at 5524 Covode Street, in Squirrel Hill – a distribution location used by members of the conspiracy – that is, Mr. Muessig, who employed the Barker brothers, Wayne and William, (Crim. No. 19-163) to operate the stash house.

While conducting surveillance, multiple individuals, including Mr. Eck, were observed carrying large black trash bags, usually with a green sticker/label on the bag to identify the strain of marijuana, out of Mr. Muessig's Covode Street stash house and placing them into their vehicles, which they parked on the street outside of the stash house.

On May 10, 2019, law enforcement conducted surveillance on both Mr. Leavy and Mr. Eck, in conjunction with intercepted communications, and confirmed that Mr. Leavy would be obtaining 25-30 pounds of marijuana from Mr. Eck in two allotments and would pay Mr. Eck $30,000 up front. In conjunction with a lawful traffic stop and search of the vehicle, driven by Mr. Leavy, law enforcement seized was $30,000.

On May 24, 2019, based upon information obtained through the wire, suggesting that Mr. Leavy and Mr. Eck were going to meet, law enforcement obtained several federal search warrants, including for Mr. Muessig's Covode Street stash house. At approximately 9:33 AM, law enforcement observed Mr. Muessig, carrying a black backpack, approach the stash house, knock on the door and window, and enter the Covode Street Apartment.

Approximately five (5) minutes later, Wayne Barker pulled up to the stash house in his Jeep Liberty, and walked into the stash house, carrying a blue shopping bag and what appeared to be a tool bag. He walked back out, returned to his vehicle, and obtained a large object, which was later identified as a vacuum sealer, out of the rear of the vehicle and then entered the stash house.

At approximately 10:10 AM, law enforcement observed a Dodge Charger with two males, including co-defendant Hector Rodriguez arrived at the stash house. Both men met Mr. Muessig at the front door of stash house. All three (3) men were then observed entering the stash house.

Law enforcement then observed Wayne and William Barker exit the stash house, look up the street and watch as a gray Dodge Ram pulled up. The driver of the Dodge Ram, later identified as Eric Vanderslice (Crim. No. 190-163), pulled down the driveway to the rear of the stash house. Law enforcement interviewed an individual, who had observed the activity and stated that he watched several individuals unload boxes from the Dodge Ram into the stash house.

Mr. Meussig and Mr. Rodriguez were observed exiting the stash house, Mr. Muessig and another unnamed co-conspirator were observed carrying two large boxes, which they placed inside of the Dodge Ram. (Image 1, below, is a still shot taken from video surveillance footage.)



At approximately 11:12 AM, law enforcement observed the Dodge Ram, with PA plates registered out of Philadelphia, pull out of the driveway. Law enforcement followed the Dodge Ram and pulled it over. Later, a warrant was obtained for the vehicle and $400,000 was located inside of the truck in the same boxes that Mr. Muessig and a co-conspirator had been carrying. (Image 2 and 3 are photographs of the evidence.)





Law enforcement executed the search warrant at Mr. Meussig's Covode Street stash house and located numerous vacuum sealed packages full of suspected marijuana, boxes full of suspected marijuana consistent with the description of the neighbor, as well as packaging material, vacuum sealer, and money counter. *See* Exhibit A (photographs of search warrant at Mr. Muessig's stash house). In all, investigators seized approximately, at least, 404 pounds (183 kilograms) of marijuana from the stash house alone that day as well as an additional $5,012.00.

### III.     APPLICABLE SENTENCING GUIDELINES RANGE

The United States Supreme Court has instructed that "district courts must begin their [sentencing] analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Peugh v. United States*, 133 S.Ct. 2072, 2083 (2013) (quoting *Gall v. United States*, 522 U.S. 38, 49 (2007)). Sentencing decisions are to be "anchored by the Guidelines," and appellate courts may presume that Guidelines sentences are reasonable. *Peugh*, 133 S.Ct. at 2083. When considering a sentence outside of the Guidelines Range, the Court "must consider the extent of the deviation and ensure that the justification ***is sufficiently compelling*** to support the degree of the

variance." *Id*. (citing *Gall*, 522 U.S. at 50) (emphasis added). "For even though the Guidelines are advisory rather than mandatory, they are . . . the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 522 U.S. at 47 (citing *Rita v. United States*, 551 U.S. 338, 349 (2007)).

In this case, the Guideline Range is 60 months' imprisonment. *See* USSG § 5G1.2(b). While the otherwise applicable Guideline Range is 46-57 months, this Court and the parties are bound by the statutory mandatory minimum in this case, which is established by the amount of ***seized*** marijuana from Mr. Muessig's stash house. The parties have stipulated to the base offense level, at least 100 but less than 400 kilograms of marijuana, which the United States agreed to based solely upon the defendant's very early decision that he would accept responsibility and plead guilty.[2] Thus, this Guideline Range accounts for the controlled substances Mr. Muessig was personally responsible for distributing, a two-level increase for maintaining the Covode Street stash house, as well as a three-level reduction for acceptance of responsibility, pursuant to §§3E1.1(a) and 3E1.1(b).

As set forth in USSG § 5C1.2: "the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)–(5)." Here, Mr. Muessig meets the criteria in subsections 1-3. While the United States did not seek a role-enhancement, Mr. Muessig's conduct may disqualify him based upon the fourth criteria ("the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing

---

2.    The United States would have otherwise sought to increase the amount of marijuana attributable to Mr. Muessig, based upon the conspiracy, well-beyond 400 kilograms.

guidelines"). Regardless, Mr. Muessig has <u>not</u> met the fifth prong of the "safety valve", which requires:

> not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

As the United States informed the probation office and the court, Mr. Muessig expressed, through counsel, that he does not want to engage in what is commonly referred to as the "safety valve proffer" and is therefore ineligible for relief from the mandatory minimum sentence. Thus, the Court and the parties are bound by the mandatory minimum sentence. 18 U.S.C. § 3553(f)(1)-(5).

## V. SECTION 3553 FACTORS

The factors cited under Title 18, United States Code, Section 3553(a) support the United States' position regarding the appropriate sentence in this case.

**(1) 18 U.S.C. § 3553(a)(1) – The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

**(a) The Nature and Circumstances of the Offense**

As set forth above, Mr. Muessig was a large-scale marijuana supplier in the Greater Pittsburgh Area. Mr. Muessig obtained substantial quantities of marijuana from one of his suppliers in Philadelphia that he then redistributed. Importantly, the marijuana that he sold was redistributed to other drug-traffickers, including Howard McFadden and SCO gang members. During intercepted communications over telephones operated by Mr. McFadden, investigators learned that Mr. McFadden and his co-conspirators financed their heroin, cocaine and crack drug-trafficking by increasing their marijuana business, largely because marijuana attracts a

comparatively larger customer base and individuals who purchase marijuana often have the money to pay more for higher strains of marijuana, like Mr. Muessig distributed.

### (b)    History and Characteristics of the Defendant

The Presentence Investigation Report (PSIR) in this case details factors regarding Mr. Muessig's positive family life, steady income, and lack of criminal history. He, does, however, reportedly have "cannabis use disorder – severe." *See* PSIR ¶ 52.

Mr. Muessig is uncharacteristic of many *drug traffickers* who appear before the Court – in this case, and generally – a law degree, a well-paying means of supporting himself and his wife, through real-estate, substantial assets, and a supportive family.

But that was not enough. Mr. Muessig wanted more money.

As a result, he decided to take a shortcut, employing his ability to "think like a criminal" and acting on his statement that "laws are arbitrary" by establishing a well-orchestrated, illegal marijuana distribution operation in Pittsburgh, PA.

While, Mr. Muessig's rap video may have been a "satire", his actions speak louder than words and today, his "trap" is closed because of it. [3]

### (2)    18 U.S.C. § 3553(a)(2)(A) – The Need for the Sentence Imposed To Reflect The Seriousness Of The Offense, To Promote Respect For The Law And To Provide Just Punishment For The Offense

The crime for which Mr. Muessig has pled guilty, a violation of federal narcotics law, is a serious crime, which is met with a commensurate mandatory minimum sentence of 60 months' imprisonment. In connection with his guilty plea, Mr. Muessig admitted his involvement in conspiring to distribute marijuana as well as possessing with intent to distribute 100 kilograms or

---

3.    "You keep your trap shut, and I'll keep your trap open." Daniel Muessig. "Trap", in drug-trafficking parlance, is a reference to selling drugs in order to make money and support oneself.

more of marijuana. As this Court is aware, Mr. Muessig's marijuana was sold to Mr. Eck, who in turn sold the marijuana to, among others, Chadlin Leavy. Mr. Leavy, in turn, sold marijuana as well as cocaine and heroin to, among others, Howard McFadden, the leader of the neighborhood-based street gang, SCO. Mr. Muessig admitted that the amount of marijuana he was personally responsible for distributing was between 100 to 400 kilograms or approximately 220 to 880 pounds of marijuana in a one-month timeframe. The statutory mandatory minimum, which becomes the Guideline Range, adequately accounts for Mr. Muessig's offense conduct, as well as his acceptance of responsibility, sending a clear message that laws are not arbitrary and that this is a serious offense that is being met with a just punishment.

**(3)    18 U.S.C. § 3553(a)(2)(B) – The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct**

The United States hopes that Mr. Muessig's early acceptance of responsibility for his actions is a sign that Mr. Muessig intends on staying on the "right" side of the law going forward and will continue to be an otherwise productive member of society upon his release. Even so, "[drug] trafficking and abusing illicit drugs destroy neighborhoods, contribute to violence and victimization, and often ruin the lives of drug users and their families." *Drugs*, Community Oriented Policing Services, United States Department of Justice, https://cops.usdoj.gov/drugs. Given the many societal problems associated with drug trafficking, deterring others from putting illicit drugs onto the streets, in the first place, is paramount. A sentence of 60 months' imprisonment, the mandatory minimum established by statute, will sufficiently penalize Mr. Muessig's conduct, deterring him and others who may think they can take a shortcut to make "easy" money.

  **(4)  18 U.S.C. § 3553(a)(2)(C) – The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant**

Here, Mr. Muessig has remained compliant with his bond conditions while on pre-trial and pre-sentence supervision. A term of imprisonment will also serve to protect the public from further crimes of this defendant.

  **(5)  18 U.S.C. § 3553(a)(3), (4) – The Kinds of Sentence and the Sentencing Range Established by the Applicable Category of Offense Committed by the Applicable Category of Defendant as Set Forth in the Guidelines**

Here, the parties have agreed, pursuant to the terms of the plea agreement, and with the recommendations made by the Probation Office, that Mr. Muessig is subjected to a total offense level of 23, which carries a Guideline Range of imprisonment of 46 to 57 months; although, because there is a statutory mandatory minimum, the Guideline Range becomes 60 months' imprisonment.

  **(6)  18 U.S.C. § 3553(a)(5) – Any Pertinent Policy Statement**

There are no pertinent policy statements applicable to Mr. Muessig.

  **(7)  18 U.S.C. § 3553(a)(6) – The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

A sentence of 60 months' imprisonment reflects Mr. Muessig's role, at the top of the conspiracy, and conduct as a whole and sentencing him within the Guideline Range will ***not*** result in an ***unwarranted*** sentencing disparity.

**(8)     18 U.S.C. § 3553(a)(7) – The Need To Provide Restitution To Any Victims Of The Offense**

Restitution is not applicable in this case.

                Respectfully submitted,

                CINDY K. CHUNG
                United States Attorney

                */s/ Rebecca L. Silinski*
                REBECCA L. SILINSKI
                Assistant United States Attorney
                PA ID No. 320774